Olga M. MOLINA QUINTERO,
Plaintiff,

v.

CARIBE G.E. POWER BREAKERS,
INC., et al., Defendants.

No. CIV.99–1028 RLA.

United States District Court,
D. Puerto Rico.

Dec. 9, 2002.

Juan A. Hernandez-Rivera, San Juan, PR, Federico R. Ducoudray-Acevedo, San Juan, PR, Raymond Rivera-Esteves, Bayamon, PR, for plaintiff.

Rafael Escalera-Rodriguez, Ineabelle Santiago-Camacho, Reichard & Escalera, San Juan, PR, for Caribe GE Power Brakers, Inc., defendant.

Rafael Colon, Vega Baja, PR, pro se.

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

ACOSTA, District Judge.

Plaintiff and defendants have filed cross-motions for summary judgment which are hereby disposed of as follows.

### BACKGROUND

This action was instituted by plaintiff, OLGA M. MOLINA QUINTERO, ("plaintiff") against CARIBE G.E. POWER BREAKERS, INC. ("G.E."), her former employer, as well as RAFAEL COLON MALDONADO ("COLON") individually, alleging sexual discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and various local discrimination statutes. Plaintiff also requests relief under the Puerto Rico torts provision.

Both G.E. and COLON have moved for summary judgment on the discrimination and supplemental jurisdiction claims. Plaintiff responded thereto and submitted a cross-motion for summary judgment on her behalf.

### SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions. *See Sands v. Ridefilm Corp.,* 212 F.3d 657, 660–61 (1st Cir.2000). Federal courts will grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". Rule 56(c) Fed.R.Civ.P. The First Circuit Court of Appeals has reiterated that the function of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Cortés–Irizar-ry v. Corporación Insular,* 111 F.3d 184, 187 (1st Cir.1997) (citing *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992)); *Vega–Rodriguez v. P.R.T.C.,* 110 F.3d 174, 178 (1st Cir.1997).

The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997). "To defeat a motion for summary judgment, the nonmoving party must demonstrate the existence of a trial-worthy issue as to some material fact." *Cortés–Irizarry,* 111 F.3d at 187.

A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. *Morris v. Gov't Dev. Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir.1994); *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). *See also Basic Controlex Corp. v. Klockner Moeller Corp.,* 202 F.3d 450, 453 (1st Cir.2000) ("A genuine issue of fact exists only if a reasonable jury could resolve it in favor of either party.").

A fact is material if it might affect the outcome of a lawsuit under the governing law. *Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir.1995). "A fact is 'material' if it potentially could affect the suit's outcome... [and is] 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortés–Irizarry,* 111 F.3d at 187 (citations omitted).

The court is required to "constru[e] the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's favor." *Carmona v. Toledo,* 215 F.3d 124, 131 (1st Cir.2000); *Cortés–Irizarry,* 111 F.3d at 187.

A party moving for summary judgment must not only show that there is "no genuine issue of material facts", but also that he is "entitled to judgment as a matter of law." *Vega–Rodríguez,* 110 F.3d. at 178.

## HOSTILE WORK ENVIRONMENT

The protection against discrimination in employment based on sex provided by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) has been expanded to areas beyond strictly "economic" and "tangible discrimination" to situations where "sexual harassment is so severe or pervasive as to alter the condition of the victim's employment and create an abusive working environment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citations, internal quotation marks and brackets omitted); *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

■ Ascertaining which particular conduct falls within the "severe or pervasive" realm in order to trigger Title VII protection is no easy task. However, "in order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher,* 524 U.S. at 787, 118 S.Ct. 2275. The court will examine the totality of the circumstances to determine whether the degree of the hostile or abusive environment the employee is subjected to is intense enough to fit within Title VII protection. *Id.*

[W]hether the environment is objectively hostile or abusive must be answered by reference to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.

*Marrero v. Goya de P.R., Inc.,* 304 F.3d 7, 18–19 (1st Cir.2002) (citing *Harris* ) (internal citations omitted); *Gorski v. New Hampshire Dep't of Corrections,* 290 F.3d 466, 472 (1st Cir.2002); *Conto v. Concord Hosp., Inc.,* 265 F.3d 79, 82 (1st Cir.2001); *O'Rourke v. City of Providence,* 235 F.3d 713, 729 (1stCir.2001).

■ In *O'Rourke,* 235 F.3d at 728 the Court summarized the elements plaintiff must prove in order to succeed in her hostile work environment claim as set forth by the Supreme Court. These are:

(1) that she . . . is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

A hostile work environment may result from "sexual remarks, innuendoes, ridicule and intimidation . . . disgusting comments" *Goya,* 304 F.3d at 19 (citations and internal quotations omitted) "unwelcome sexual advances or demands for sexual favors" *Gorski,* 290 F.3d at 472 (citations and internal quotations omitted) which are "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *O'Rourke,* 235 F.3d at 728 (citations and quotation marks omitted).

■ It is plaintiff's burden to establish the severity and pervasiveness of the harassment sufficient to alter the conditions of her employment. *Conto*, 265 F.3d at 82. This determination is "fact-specific". *Id.* at 81.

Ordinarily "it is for the jury to weigh those factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment." *Goya*, 304 F.3d at 19.

### Employer's Liability

■ The employer's liability in this type of litigation will vary depending on whether the alleged harasser is the victim's co-worker or supervisor.

If a co-worker, an employer will be held accountable "if it 'knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.'" *White v. New Hampshire Dep't of Corrections*, 221 F.3d 254, 261 (1st Cir.2000) (citing *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 872 (6th Cir.1997)).

In situations where a supervisor is charged with the inappropriate conduct his employer may defend to harassment claims provided no tangible employment action has been taken. "No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

If the offender is a supervisor and no tangible employment action has been taken the employer carries the burden of establishing the following facts as an affirmative defense to the claims: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus.*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633.

■ Plaintiff has specifically acknowledged that codefendant COLON was not her supervisor.[1] She argues instead that "Mr. Colón's actions against plaintiff combined with G.E.'s inaction to her complaints of sexual harassment resulted in a tangible employment action against plaintiff. That tangible employment action was plaintiff's induced resignation." Plaintiffs' Opposition (docket No. 94 at 15).

In other words, plaintiff contends that she was forced to resign because the situation at work became intolerable due to COLON's unbridled sexually motivated conduct. It is undisputed that plaintiff resigned from her employment with G.E. However, the non-voluntariness of her resignation may be the basis of a constructive discharge claim[2] but not grounds for vicarious liability under *Burlington*. Therefore, this event does not qualify as a tangible employment action for purposes of this suit since no constructive discharge claim has been asserted.[3]

---

1. In her opposition she states "[p]laintiff hereby clarifies to this Honorable court that it is not her contention that Mr. Colón was her supervisor." (docket No. 94 at 15).

2. *See Goya*, 304 F.3d at 28 ("working conditions so difficult or unpleasant that a reasonable person in her shoes would have felt compelled to resign.") (citations and internal quotations and marks omitted).

3. Plaintiff's request to amend the complaint to include a constructive discharge allegation (docket No. 40) was denied on February 22, 2000 (docket No. 43).

Additionally, plaintiff contends that she was the victim of a tangible employment action by G.E. because COLON interfered with her duties. She argues that his "job position and duties allowed him to commit actions that resulted *de facto* in a tangible employment action affecting the plaintiff." Plaintiff's Opposition (docket No. 94 at 16). As examples thereof plaintiff mentions that codefendant would ignore her requests for service to her machine which would interrupt production in the area and constantly provoke arguments between them; that she had to attend meetings to ventilate their arguments, and was required to visit G.E.'s Employee Assistance Program.

However, as previously noted, the Supreme Court has defined a tangible adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." *Burlington Indus.*, 524 U.S. at 749, 118 S.Ct. 2257, 141 L.Ed.2d 633. This is not plaintiff's case. At no time was her position or benefits compromised but rather, according to her own account, her work situation became unbearable due to codefendant's unwelcome behavior. This is precisely the type of situation hostile environment claims seek to address.

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct... It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own... Such claims are based on the cumulative effect of individual acts.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2074, 153 L.Ed.2d 106 (2002). *See also Goya*, 304 F.3d at 18 (distinction between "hostile work environ-ment claims and claims involving discrete acts of discrimination or retaliation, such as a discharge, failure to promote, denial of transfer, or refusal to rehire.")

In her deposition plaintiff related repeated sexually charged comments and gestures codefendant COLON directed at her during a period of approximately one year. These remarks and gesticulations are patently vulgar and offensive and if proven easily meet the severe and pervasive criteria necessary for a hostile environment claim.

G.E. contends that plaintiff's testimony should be disregarded and the claims dismissed because her version of events is not corroborated by other plant personnel or G.E.'s records. This argument, however, presents a credibility issue which falls outside the scope of the summary judgment setting. *See Domínguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir. 2000) ("[a]t the summary judgment stage, viewing the evidence as a whole ... the court should not engage in credibility assessments"); *Pérez–Trujillo v. Volvo Car Corp.*, 137 F.3d 50, 54 (1st Cir.1998) (credibility issues not proper on summary judgment).

### Notice and Remedial Measures

G.E. denies having any prior notice of the alleged harassment. It argues that plaintiff never complained of the offensive conduct despite ample opportunities to do so. Further, it argues that even assuming that plaintiff had indeed mentioned that codefendant COLON was a "fresco" this particular comment does not necessarily convey a sexual harassment connotation to trigger the pertinent notice requirement. G.E. further contends that it promptly and adequately responded once alerted to a sexual harassment situation by defendant's in-house physician and submitted evidence of all steps taken in this regard.

In her deposition plaintiff testified that she consistently complained to JOSE AYALA, her group leader, that codefendant was a "fresco"[4] to no avail. She also claims to have complained to EDWIN MEDINA, her supervisor, as well as VIVIANA MAYO, the human resources director, without any favorable response. She also argues that both G.E.'s in-house doctor and her own psychiatrist confirmed that she was the victim of sexual harassment. Plaintiff further noted a similar situation had been brought to the attention of MR. AYALA by CARMEN ORJALES, her co-worker, without any steps having been taken against COLON. According to plaintiff the administrative investigations made by MS. MAYO regarding harassment allegations were deficient.

Again, G.E.'s version of the facts is disputed by plaintiff's sworn testimony which makes summary judgment on this particular issue inappropriate under the present circumstances. Given the contradictory version of the events presented by the parties this matter must be presented to the jury for a credibility determination.

## CLAIMS AGAINST COLON/SUPPLEMENTAL JURISDICTION

Codefendant COLON has joined in the request for summary judgment filed by G.E. The individual defendant has petitioned the court to decline jurisdiction over the supplemental claims assuming dismissal of the federal cause of action asserted under Title VII.

■ The only cause of action asserted against COLON in the pleadings is a claim based on tort pursuant to art. 1802 of the Puerto Rico Civil Code, Laws of P.R. Ann. tit. 31, § 5141 (1990). There *can* be no liability of a co-worker under Title VII since the scope of the statute is limited to employers of the alleged victim of discrimination. *See Olivo–González v. Teacher's Retirement Bd.*, 208 F.Supp.2d 163, 166 (D.P.R.2002); *Matos Ortiz v. Com. of Puerto Rico*, 103 F.Supp.2d 59, 61 (D.P.R. 2000); *Maldonado–Cordero v. AT & T*, 73 F.Supp.2d 177, 184 (D.P.R.1999); *Canabal v. Aramark Corp.*, 48 F.Supp2d 94, 96 (D.P.R.1999); *Santiago v. Lloyd*, 33 F.Supp.2d 99, 102 (D.P.R.1998).

■ The court having denied the request for dismissal of the Title VII claims it may, in its discretion, entertain the state-based claim under its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Thus, COLON's request is also **DENIED**.

## CONCLUSION

Based on the foregoing, G.E.'s Motion for Summary Judgment (docket No. 91),[5] COLON's Joinder (docket No. 92) and plaintiff's Cross–Motion for Summary Judgment (docket No. 94)[6] are hereby DENIED.

IT IS SO ORDERED.

---

4. The English translation is "fresh". In the context as described by plaintiff it means "imprudent" or "impertinent" or "insolent". *Roget's International Thesaurus* (4th Ed.).

5. *See* G.E.'s Reply to Opposition (docket No. 96).

6. *See* G.E.'s Opposition (docket No. 97); COLON's Opposition (docket Nos. 99 & 100); plaintiff's Reply (docket No. 103); G.E.'s Sur–Reply (docket No. 105) and COLON's Sur–Reply (docket No. 107).